**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

IN RE:                                                          Case No. 8:04-md-2523-T-30TBM
                                                                MDL 1626 - ALL CASES
ACCUTANE PRODUCTS
LIABILITY LITIGATION,
_____/

LAURIE A. STUPAK,[1]

    Plaintiff,

v.                                                              Case No. 8:05-cv-926-T-30TBM

HOFFMANN-LA ROCHE, INC., et al.,

    Defendants.
_____/

**O R D E R**

THIS MATTER is before the court on the following motions:

(1) **U.S. Defendants' Motion to Compel Discovery from Plaintiff Laurie Stupak** (Doc. 7) and Plaintiff's response (Doc. 12); and

(2) **U.S. Defendants' Motion to Compel Discovery from Bartholomew Stupak, Sr.** (Doc. 8), Supplemental Brief in Support (Doc. 21), and non-party's Bartholomew Stupak's opposition (Doc. 23);

(3) **U.S. Defendants' Expedited Motion to Take Three (3) Additional Fact Depositions** (Doc. 28).

A hearing on these and other matters was conducted on April 20, 2006.

By their first motion (Doc. 7), the U.S. Defendants seek an Order (1) requiring Plaintiff to comply with the Case Management Order (hereinafter "CMO") and explain her failure to produce documents and other requested items in a timely manner, (2) requiring

---

[1] Plaintiff, Laurie A. Stupak, is the mother of Bartholomew Stupak, Jr., the decedent, in this wrongful action. Her husband is Bartholomew Stupak Sr., a United States Congressman representing the 1st district of Michigan.

Plaintiff to supplement her written discovery responses and to produce all documents in response to the U.S. Defendants' outstanding requests within ten days, (3) requiring Plaintiff's counsel to certify the accuracy and completeness of Plaintiff's supplemental discovery responses, (4) permitting Defendants to reopen up to three of the depositions already taken, at Plaintiff's expense, to inquire about documents and items that should have been produced prior to the initial depositions, and (5) requiring Plaintiff to pay the attorney's fees associated with the instant motion. In support of these requests, Defendants allege that testimony from certain depositions has revealed that Plaintiff has not fully complied with discovery requests with respect to producing all of the decedent's handwritten notes, all photographs of the decedent, and all videotapes on which the decedent appears.[2] At the hearing, counsel for the U.S. Defendants indicated that the disputed issues had been narrowed to the failure of the Plaintiff to produce certain notes found by the police on a table at the scene where the Plaintiff's son was found deceased, computer documents, and a school deficiency report purportedly issued to the Plaintiff's son. As for the remaining disputed items, Plaintiff protests that she cannot produce what she does not have. Thus, she is unaware of any notes on a table or that such notes may already been produced, the family no longer

---

[2] In her response, Plaintiff urges the court to deny Defendants' motion, asserting that she has supplemented her written responses and document production, the Federal Rules of Civil Procedure do not require her attorney to certify the completeness or accuracy of her responses, her discovery responses have not been untimely and Defendants have not been prejudiced by the timing of her supplemental responses, there is no need to re-depose any witnesses, and there is no basis to award attorney's fees on Defendants' instant motion. Plaintiff also explains her alleged untimely production of certain photographs and handwritten notes from of her son and she denies that she has the particular notes that Defendants seek. As for the videotapes, Plaintiff indicates that her prior counsel informed her that all videotapes had been provided to the Defendants. Plaintiff certifies her responses by way of Affidavit. (Doc. 12, Ex. E).

has possession of any of the computers it had at the time of her son's death, and she is unaware of any grade deficiency notice from her son's teacher.

Upon consideration, the **U.S. Defendants' Motion to Compel Discovery from Plaintiff Laurie Stupak** (Doc. 7) is **GRANTED** in part. To the extent that Plaintiff may discover such items, she remains under a continuing duty to promptly them. Except as noted immediately below regarding depositions, the motion is denied in all other respects.[3]

By the **U.S. Defendants' Expedited Motion to Take Three (3) Additional Fact Depositions** (Doc. 28), the Defendants seek permission of the court to exceed the fifteen deposition limit established by the court's CMO. More particularly, the Defendants seek permission to depose (1) Amber Twork, allegedly a close friend of the decedent's, (2) Anne Barley, another close friend of the decedent recently discovered, and (3) Connie Swander, a member of the Michigan State Police crime laboratory. Plaintiff opposes the motion. Upon consideration, the motion (Doc. 28) is **GRANTED** in part. The U.S. Defendants may depose Anne Barley and Connie Swander. Neither of the two additional depositions shall exceed three (3) hours in total length, including a reasonable time for questions by Plaintiff's counsel. In all other respects, the motion (Doc. 28) is denied.

Regarding, the **U.S. Defendants' Motion to Compel Discovery from Bartholomew Stupak, Sr.**, (Doc. 8) as supplemented (Doc. 21), Defendants seek supplemental discovery from Plaintiff's husband, Congressman Bartholomew Stupak Sr. Defendants argue that he has improperly limited his testimony and document production based on an expansive and incorrect assertion of congressional privilege. By their supplement, Defendants indicate that

---

[3]The court has admonished Plaintiff's counsel to familiarize himself with the Court's procedural orders in the MDL 1626, Case No. 8:04-MD-2523-T-30TBM, in particular the operative Case Management Order (Doc. 190).

3

the issues have been narrowed somewhat,[4] however, they still maintain that Representative Stupak: (1) has waived any claim of privilege by failing to assert it in a proper and timely manner; (2) cannot preserve the privilege while *acting* as a private plaintiff; (3) has disseminated the material to third parties in such a fashion that the material so disseminated is discoverable; and (4) has improperly asserted the privilege when declining to answer questions concerning matters about which he may testify at the trial.  Defendants seek an Order directing Representative Stupak to produce all of the documents related to Accutane he has accumulated as a representative, or alternatively, to produce all of the documents related to Accutane he has disseminated to third persons outside of Congress, or at a minimum an *in camera* review of such matters.  Defendants also request that the court bar Representative Stupak from testifying at trial on any matters that he claims are subject to the congressional privilege and about which he has refused to speak at depositions.

At arguments, counsel for Representative Stupak responded that the documents the congressman and staff have accumulated related to Accutane have been carefully reviewed and Defendants have now been forwarded copies of almost all of the non-privileged

---

[4]The Defendants complain that Representative Stupak improperly invoked the privilege in five areas: conversations he had and documents he provided to his wife and her attorneys; conversations he had and documents he provided to expert witnesses in his wife's case; conversations he had and documents he provided to other Accutane plaintiffs and their attorneys; his efforts to influence federal agencies with respect to their oversight of Accutane; and matters about which he may be called to testify at trial.  From the pleadings and arguments, it appears that Representative Stupak subsequently produced documents relating to his public statements on Accutane; his communications with plaintiffs, their lawyers, and their experts; and his attempts to lobby agencies; and he appeared for a second half-day of deposition on March 14, 2006.  (Doc. 21 at 3-4).  Thus, he claims he has produced 520 pages of his congressional records, as well as a comprehensive written description of what he withheld.  (Doc. 23 at 6-7).  Representative Stupak's counsel claims that upon his own independent review of the documents, all non-privileged documents have been produced.

4

Accutane-related documents requested.[5] Counsel opposes any effort to label Representative Stupak as a *de facto* Plaintiff in this cause and asserts that, even if he was such, he would maintain his congressional privilege. Fundamentally, counsel urges that the Defendants misunderstand the privilege afforded by the Speech and Debate Clause of the U. S. Constitution . He urges further that the privilege cannot be waived absent extraordinary circumstances and that it is impermissible in these circumstances to require either an *in camera* review or for the congressman to provide a privilege log.

The congressional privilege stems from the protections afforded members of Congress by the Speech and Debate Clause.[6] These protections apply to all activities "within the 'legislative sphere,'" Gravel v. U.S., 408 U.S. 606, 624-25 (1972), and are absolute. Eastland v. U.S. Servicemen's Fund, 421 U.S. 491, 501 (1975). The privilege permits Congress to, among other things, "conduct investigations and obtain information without interference from the courts . . ." Brown & Williamson Tobacco Corp. v. Williams, 62 F.3d 408, 416 (D.C. Cir. 1995); see also Eastland, 421 U.S. at 504. To the extent that it is possible for the Speech or Debate privilege to be waived, it "can be found only after explicit and unequivocal renunciation of the protection." U.S. v. Helstoski, 442 U.S. 477, 490-91 (1979).

Initially, I find that Representative Stupak has not waived the privileges afforded him under the Speech or Debate Clause and clearly there has been no "explicit and unequivocal

---

[5]According to counsel, a vast majority of the documents that were shared with third persons have been produced. For example, all but three documents *shared* with attorneys have been produced. For the three, there is a claim that those were shared for legislative purposes and maintain the privilege. On the other hand, there are several banker's boxes of material collected by the congressman which have not been shared and for which he asserts the privilege regardless of their source.

[6]The Speech or Debate Clause states in pertinent part, ". . . for any Speech or Debate in either House, [Members of Congress] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl.1.

5

renunciation of this protection" by the representative. Although Defendants aptly urge that the privilege asserted in this case is done so broadly, it is not demonstrated on this motion that the expansive claim of privilege has not been corrected by the involvement of House of Representative counsel and through the production of documents determined appropriate for production. At this point, the court accepts counsel's representation that a thorough and careful review of the material collected by the representative and staff has been made and no further production is required.

The representative's assertion of the privilege at depositions to shield his disclosure of information on which he relies for his potential testimony at trial is more troubling. On the one hand, I agree with the Defendants that the representative may not use the privilege as both a sword and a shield when he assumes the role of an interested witness in the wrongful death action of his son. There is nothing "legislative" in that role. However, the Defendants cite no authority permitting the court to strike such witness's trial testimony at this stage of the proceedings solely because he has asserted the privilege. I agree with the representative's counsel that this is a trial matter that is more appropriately left to the determination of the trial judge. I would caution the representative, however, that the discovery period in this litigation is limited. His failure to give a full accounting of the matters he may testify to at trial and the basis for such testimony within the discovery period will likely have serious adverse consequences on the scope of his testimony at trial. He has been fairly warned.

Lastly, regarding an *in camera* review or the requirement of a privilege log, absent clear authority for compelling the same, I agree with Representative Stupak's counsel that requiring the holders of the privilege to submit to such is contrary to the purpose of the Speech or Debate Clause. See Helstoski, 442 U.S. at 491 (providing that purpose is to

preserve constitutional structure of separate, independent branches of government and noting that any lesser standard would risk intrusion by the Executive and Judiciary into the sphere of protected legislative activities); Eastland, 421 U.S. at 503 (reaffirming that once it is determined that a congressman was acting within the "legitimate legislative sphere," the Speech or Debate Clause is an absolute bar to interference).[7] Accordingly, the U.S. **Defendants' Motion to Compel Discovery from Bartholomew Stupak, Sr.,** (Doc. 8) as supplemented (Doc. 21) is **DENIED**.

**Done and Ordered** in Tampa, Florida, this 28th day of April 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
United States District Judge
Counsel of Record

---

[7] As counsel notes, Mr. Stupak has provided a general, written description of broad categories of documents responsive to Defendants' October 20, 2005, subpoena duces tecum which were withheld on Speech or Debate grounds. Counsel argues that these descriptions are adequate to enable Defendants to understand what was withheld and why. (Doc. 23 at n. 10). At this point, I tend to agree.