**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**LAURIE A. STUPAK,**

**Plaintiff,**

**v.** **Case No. 8:05-cv-926-T-30TBM**

**HOFFMANN-LA ROCHE, INC., et al.,**

**Defendants.**

---

# ORDER

THIS CAUSE comes before the Court upon Defendants Hoffman-La Roche, Inc.'s and Roche Laboratories Inc.'s Motion for Summary Judgment on Warning Adequacy (Dkt. 71), Plaintiff's Response in opposition to the same (Dkt. 84) and Defendants Reply (Dkt. 86). Upon review of the memoranda and hearing oral argument, the Court determines Defendants' motion should be **granted**:

## BACKGROUND

This case arises out of the design, labeling, and sale of Accutane, a prescription acne medication manufactured by the Defendants. Plaintiff alleges Defendants failed to adequately warn physicians and patients of the risks of depression and suicide associated with Accutane use, and as a result, her son, Bartholomew Stupak, Jr. (hereinafter "BJ"), committed suicide after taking Accutane.

BJ was first treated by Dr. Micheal Smullen on April 2, 1998, for a mild form of acne. His acne subsequently worsened and Dr. Smullen prescribed antibiotic and corticosteriod treatments. By December 7, 1999, BJ's acne again worsened and became unresponsive to prior treatments. Dr. Smullen recommended and prescribed Accutane for BJ's cystic acne as it was unresponsive to conventional medications.

In February 1998, two years prior to BJ's use of Accutane, the physician package insert for Accutane was amended to include the following warnings concerning the risk of psychiatric side effects:

> **WARNINGS:** ***Psychiatric Disorders:*** **Accutane may cause depression, psychosis, and, rarely, suicidal ideation, suicide attempts, and suicide. Discontinuation of Accutane therapy may be insufficient; further evaluation may be necessary. No mechanism of action has been established for these events (see ADVERSE REACTIONS).**
>
> **. . .**
>
> **ADVERSE REACTIONS:. . .**
>
> In the post-marketing period, a number of patients treated with Accutane have reported depressions, psychosis, and rarely, suicidal ideation, suicide attempts and suicide. Of the patients reporting depressions, some reported that the depression subsided with discontinuation of therapy and recurred with reinstitution of therapy (see WARNINGS).
>
> . . .
>
> The following CNS side effects have been reported and may bear no relationship to therapy -seizures, emotional instability including depression, dizziness, nervousness, drowsiness, malaise, weakness, insomnia, lethargy and paresthesias.

(Dkt. 71 at Exhibit A) (emphasis in original). The physician package insert was also included in the 1999 edition of the Physician's Desk Reference. Id. at exhibit D.[1]

In prescribing medication, Dr. Smullen testified that he regularly reviews the information provided to him by the manufacturers of the drugs as well as the Food and Drug Administration (hereinafter "FDA") approved labeling for the medications. (Dkt. 71-8 at 5). While Dr. Smullen does not acknowledge being aware of Defendants' warning about suicide, he was aware of the published reports regarding depression and suicide experienced by Accutane users. Id. at 6-7. Notwithstanding, Dr. Smullen testified Accutane is very effective medication in the treatment of severe cystic nodular acne, the type from which BJ was suffering, and he continues to prescribe Accutane in his practice. Id. at 22. Moreover, he testified even if he had known about the adverse drug effect reports, he still would have prescribed Accutane to BJ. Id. at 33, 34.

## DISCUSSION

### A. Summary Judgment Standard.

Summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this rather exacting standard. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157

---

[1] Information regarding Accutane had also been previously provided to the Stupak family when Dr. Smullen prescribed Accutane to B.J's older brother Ken. Based on Ken's prior successful use of the drug, Dr. Smullen suggested the treatment for B.J.

(1970). In applying this framework, the evidence, and all reasonable factual inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party. See Arrington v. Cobb County, 139 F.3d 865, 871 (11th Cir.1998); Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir.1997).

Equally clear, however, is the principle that the nonmoving party bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in his or her favor. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir.1990). The nonmoving party "[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response ··· must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 835 (11th Cir.1998) ("Summary judgment may be granted if the evidence is 'merely colorable.'") (quoting Anderson, 477 U.S. at 248, 106 S.Ct. 2505). Further, and significantly, mere conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment. See Earley, 907 F.2d at 1081. The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. See Celotex, 477 U.S. at 322.

Defendants are seeking summary judgment on two grounds: (1) the warnings provided to BJ's treating physician clearly, adequately and unambiguously warned of the specific injury complained of by Plaintiff, i.e. suicide; and (2) BJ's suicide was not proximately caused by the Defendants' failure to warn.

**B. Adequacy of Warnings.**

"As a general rule the courts of this country universally hold that in the case of prescription drugs, the provision of proper warnings to a physician will satisfy the manufacturer's duty to warn since the patient cannot obtain the drug but through the physician." Lukaszewicz v. Ortho Pharmaceutical Corporation, 510 F. Supp. 961, 963 (E.D. Wisc. 1981). In determining whether a warning is adequate, a court must consider several factors including "whether the warning is accurate, clear, consistent on its face, and whether it portrays with sufficient intensity the risk involved in taking the drug." Golod v. Hoffman La Roche, 964 F. Supp. 841, 853 (S.D.N.Y. 1997). Plaintiff argues that the warnings provided to Dr. Smullen were inadequate because they did not advise that the use of Accutane could result in suicide without prior signs of depression, i.e., that Accutane patients could commit suicide spontaneously or impulsively.

In order for a warning to be adequate, it "must be commensurate with the risk involved in the ordinary use of the product." Golod, 964 F. Supp. at 854 (citations omitted). Additionally, the language of the warning must be "direct, unequivocal and sufficiently forceful to convey the risk." Id. As detailed above, the package inserts provided at the time Accutane was prescribed to BJ identify as possible side effects the possibility of suicide,

suicidal ideation and suicide attempts with the use of Accutane. While the warning does not specifically warn of spontaneous or impulsive suicide, it does warn of the precise adverse effect suffered by B.J. (suicide) and the seriousness of the effect. Suicide is often spontaneous or impulsive. Those words do not make the word suicide any stronger or clearer. Moreover, the warning on the insert is presented in conspicuous bold face lettering. The warnings portray with sufficient intensity the risk involved in taking the drug. Therefore, Defendants' Motion for Summary Judgment will be granted.

**C. Proximate Cause.**

In addition to establishing a duty and failure to warn, Plaintiff must also establish proximate cause. See Kurer v. Parke, Davis & Company, 272 Wis. 2d 390, 409 (Wis. App. 2004). In order to establish proximate cause, Plaintiff must "generally demonstrate that had appropriate warnings been given, the treating physicians would not have prescribed or would have discontinued use of the drug." Golod, 964 F. Supp. at 857; Kurer, 272 Wis. 2d at 410. Plaintiff can present no such evidence. While Dr. Smullen testified he not aware of case reports of adverse drug effects reporting suicide which Defendants concluded were probably associated with Accutane, (Dkt. 71-8 at 33), he did testify that even if he had known of the case reports reporting suicide, he still would have prescribed Accutane for BJ:

> Q: If you had known at the time that you prescribed Accutane to BJ that there were adverse drug effects reporting suicide in which Roche concluded that were probably related to Accutane, would you have still prescribed Accutane for BJ Stupak in December of '99?
>
> . . .

THE WITNESS: The answer would be, yes.

(Dkt. 71-8 at p. 33). Additionally, Dr. Smullen testified that even if he knew Accutane could cause suicide without depression preceding suicide, he would still be comfortable prescribing the drug:

> Q: Okay. Dr. Smullen, do you have any understanding as to whether or not Accutane can cause suicide without depression preceding the suicide?
>
> . . .
>
> THE WITNESS: I'm not aware of it.
>
> . . .
>
> Q: Assuming that it could, would you still feel comfortable in prescribing Accutane to an adolescent that could cause him to commit suicide? Would you feel comfortable in doing that?
>
> . . .
>
> THE WITNESS: The answer is yes.

Id. at 36. In fact, Dr. Smullen stated that, even after the death of his patient, B.J. Stupak, he still prescribes Accutane to his patients:

> Q: Do you continue to use Accutane in your practice today, Doctor:
>
> A: Yes, I do.

Id. at 22; and that his discontinuation in usage would only occur with the removal of Accutane from the market:

> Q: Okay. Is there any type of -- can you give me an example of any type of warning that you would have to get from Roche so that you would stop prescribing Accutane?
>
> . . .

THE WITNESS: Remove it from the market.

Id. at 36-37. Plaintiff has presented no evidence to refute Dr. Smullen's testimony. Accordingly, summary judgment is appropriate on this ground as well.

It is therefore ORDERED AND ADJUDGED that Defendants Hoffman-La Roche, Inc.'s and Roche Laboratories Inc.'s Motion for Summary Judgment on Warning Adequacy (Dkt. 71) is **GRANTED**.

**DONE** and **ORDERED** in Tampa, Florida on August 17, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2005\05-cv-926 - Motion for Summary Judgment - Adequacy of Warnings.frm